GRAND TRUNK WESTERN RAILWAY COMPANY *v.*
RAILROAD COMMISSION OF INDIANA ET AL.

[No. 6,317. Filed May 28, 1907.]

1. RAILROADS.—*Commission.—Authority.—Interlocking Switches.*—The authority of the railroad commission to determine a proceeding to compel railroad companies to maintain interlocking switches is purely statutory. p. 173.

2. SAME.—*Commission.—Finality of Acts of.—Interlocking Switches.*—The action of the railroad commission in making an order requiring railroad companies to maintain interlocking switching devices is not final, since §5405f Burns 1905, Acts 1905, p. 83, §6, providing that railroad companies may file a petition in court to determine the justice or injustice of such order, establishes the rights of the parties to a judicial hearing. p. 173.

3. PLEADING.—*Complaint.—Railroad Commission.—Orders.—Setting Aside.*—A complaint to set aside or modify an order of the railroad commission requiring the maintenance of an interlocking switching device must affirmatively show that the order is unjust, or unwarranted by law. p. 175.

4. SAME.—*Complaint.—Railroad Commission. — Orders. — Setting Aside.—Appeal.*—A complaint to set aside or modify an order of the railroad commission requiring the maintenance of an interlocking switching device does not constitute an appeal from such order. p. 175.

5. RAILROADS.—*Contracts.—Superseding Police Power.*—Railroad companies, by contracting as to the maintenance of crossings, cannot preclude the enactment and enforcement of laws, under the police power, regulating such crossings. p. 176.

Grand Trunk, etc., R. Co. *v.* Railroad Com., etc.—40 Ind. App. 168.

6.  RAILROADS. — *Contracts.* — *Interlocking Switches.*—*Commission.*
    —*Duty in Apportioning Expenses.*—Where railroad companies
    have a contract fixing their respective rights and duties in refer-
    ence to the maintenance of a railroad crossing, the railroad com-
    mission, in making its order for the maintenance of an interlock-
    ing switching device, should, in apportioning the cost thereof, con-
    sider the rights and duties of the parties under such contract.
    p. 176.
7.  CONTRACTS.—*Police Power.*—*Conflict.*—Where the execution of a
    statutory police regulation does not necessarily conflict with con-
    tractual rights between persons, such contractual rights must be
    preserved. p. 177.
8.  SAME.—*Railroad Crossings.*—*Construction.*—*Guards.*—*Signals.*—
    A contract providing that a railroad company shall construct, at
    its own expense, "good and sufficient frogs and crossings" at the
    point of the crossing of another railroad, and keep same in repair,
    does not require such company to protect such crossing by guards
    or signals. p. 178.
9.  SAME.—*Railroad Crossings.*—*Guards.*—A contract by which one
    railroad company agrees that the work of constructing a crossing
    over another company's track "shall be done in a good and sub-
    stantial manner" so that the other company can operate its road
    "with convenience and safety," relates to the manner in which the
    crossing shall be constructed, and not to the manner of guarding
    same. p. 179.
10. SAME.—*Railroad Crossings.*—*Signals.*—*Interlocking Switches.*—
    A contract requiring a railroad company to erect and maintain
    good and substantial semaphore signals does not require it to
    construct and maintain interlocking switches. p. 179.
11. RAILROADS.—*Commission.*—*Interlocking Switches.*—*Contracts.*—
    Where the railroad commission, in ordering the construction and
    maintenance of interlocking switches at a certain railroad cross-
    ing, apportions the cost thereof so as justly to preserve and en-
    force the contract rights of such companies, its order will be up-
    held by the courts. p. 179.

From Lake Circuit Court; *Willis C. McMahan,* Judge.

Suit by the Grand Trunk Western Railway Company
against the Railroad Commission of Indiana and another.
From a decree for defendants, plaintiff appeals (Trans-
ferred from Supreme Court, see 167 Ind. 261). *Affirmed.*

*Anderson, Parker & Crabill,* for appellant.

*C. V. McAdams,* for the commission.

*E. C. Field, J. B. Peterson* and *H. R. Kurrie,* for appellee
company.

RABB, J.—Prior to and during the year 1880 a railroad company, known as the Chicago & Grand Trunk Railway Company, owned and operated a line of railroad now owned and operated by the appellant. Its line of road ran east and west through the station called Maynard, in Lake county, in this State. In the year 1880 a railroad company, known as the Chicago & Indianapolis Air-Line Railway Company, constructed the line of road now owned and operated by appellee Chicago, Indianapolis & Louisville Railway Company, known as the "Monon," which line of road crossed the line of the Grand Trunk Western Railway at the station of Maynard. The appellant is the successor in rights and interests of the Chicago & Grand Trunk Railway Company, and the appellee Chicago, Indianapolis & Louisville Railway Company is the successor in rights and interests of the Chicago & Indianapolis Air-Line Railway Company. At the time the last-mentioned line of railway was constructed the two companies then interested, the Chicago & Grand Trunk Railway Company and the Chicago & Indianapolis Air-Line Railway Company, entered into a written contract, as follows:

"This agreement made and entered into near July 16, 188—, by and between the Chicago & Grand Trunk Railway Company, party of the first part, and the Chicago & Indianapolis Air-Line Railway Company, party of the second part, witnesseth: That the party of the first part, for and in consideration of the performance by the party of the second part of the stipulations and agreements hereinafter set forth, doth give and grant to said party of the second part the right to construct and operate said Chicago & Indianapolis Air-Line Railway over and across the right of way of said Chicago & Grand Trunk Railway at the point where said Chicago & Indianapolis Air-Line Railway, as now located and in process of construction, shall cross the same at or near Maynard station on the line of said Chicago & Grand Trunk Railway, which said railway of the party of the second part shall have constructed, kept, and maintained at a grade on a level with the railway of said party of the first part at the point of crossing as above specified herein.

And said party of the second part, in consideration of the right to construct and operate said Chicago & Indianapolis Air-Line Railway across the right of way of said party of the first part, as above granted and set forth, agrees to construct, put in, and maintain good and sufficient frogs and crossings at the points where the track of said Chicago & Indianapolis Air-Line Railway crosses the track of the Chicago & Grand Trunk Railway, as aforesaid, and should the party of the first part, at any time hereafter, construct and lay down additional track or tracks at said point of intersection the party of the second part agrees in like manner to construct, put in, and maintain sufficient frogs and crossings to enable the party of the first part to cross the track or tracks of said second party's railway.

All of which crossings shall be put in at and upon the grade of the railway of the party of the first part, and shall be done in a good and substantial manner, so that the party of the first part shall be able to operate its road at that point with convenience and safety, and that said crossings shall be so maintained and kept in repair by the party of the second part at its individual expense forever.

And the party of the second part further agrees that it will at said point of intersection, erect, put up, and forever maintain good and substantial semaphores, or other signals, and provide the requisite watchmen to take charge of and operate the same, all of which shall be at the individual expense of said party of the second part.

In witness whereof the parties have hereunto set their hands the day and year first above written.''

Under this agreement the Chicago & Indianapolis Air-Line Railway Company and its successor, the Monon Company, have, ever since said crossing was completed, maintained a semaphore, signal and watchmen at said crossing at their own expense.

On May 4, 1905, appellee Monon Company filed with the railroad commission of this state a written petition praying that an interlocking system be established at this crossing, and also at its crossing with another road in the close vicinity. Due notice was given to all the parties. The railroad commission met pursuant to statute, examined the crossing,

and afterwards, all the railroad companies interested appearing, the commission ordered that interlocking switches should be installed and put in use at this crossing, and that the cost of installing the interlocking plant should be apportioned between appellant and appellee Monon Company, upon the basis of functions of levers used in the operation of the plant for the benefit of the several roads respectively. It further ordered that the expense of operating the device should be sustained by the two companies interested and affected, upon the same basis, except that the petitioner should contribute the sum of $780 per annum to the expense fund, and the expense in excess of this sum should be apportioned between the two companies as above stated. Afterwards the appellant herein filed its petition in the Lake Circuit Court, setting forth a description of the interlocking system ordered installed by the railroad commission, and the manner of operating the same, averring that the cost of installing such plant would be $5,000; that the cost of maintenance and operation would be $1,600 per annum, and that the present expense of said crossing was $900; and objecting to the order and regulation of the railroad commission made relative to said crossing, on the ground that it compels the Grand Trunk Western Railway Company to pay part of the cost and expense of erecting said interlocking system, including semaphores and other signals, and for the reason that it makes no provision for the payment by the Monon Company of any increased cost of maintaining and operating the signals. It further alleges that, by virtue of the contract above specified, it became the duty of the Monon Company to pay all the cost and expenses of keeping in repair, operating and managing the crossing aforesaid; that the order is in dereliction of the rights of the appellant under the contract, and asks an order to annul and set aside the order, or to modify the same, so far as to compel the Monon Company to pay all the cost and expense of installing, operating and maintaining the interlocking switch at the crossing.

The proceeding instituted by the Monon Company to have an interlocking switching device maintained at this crossing is pursuant to the statute upon that subject, which

1. originally lodged the power to order the installation of such interlocking switching device in the hands of the Auditor of State, from whose hands it was transferred by the railroad commission act to the hands of the railroad commission.

The first question that confronts the court in the consideration of this case is the question of jurisdiction. It is contended by appellee Monon Company that the ac-

2. tion of the railroad commission on this subject is final and conclusive on the parties, and not subject to review in court. The argument is made that the law providing for the installation of interlocking switching devices at railroad crossings is an exercise of the police power of the State; that it is a legislative act delegated to the railroad commission, and upon which the parties named have no right to a judicial hearing, unless such right is expressly conferred by law, and that no such hearing is provided for in the statute. Were said appellee's premises well grounded, its argument would appeal to the court with a great deal of cogency, but is the premise sound? Section two of the act of 1897, approved March 8 (Acts 1897, p. 237, §5158c Burns 1901), provides for the protection of railroad crossings by interlocking switches, and vests the authority to hear and determine all matters connected with the establishment of such, in the Auditor of State. Section three of the railroad commission act (Acts 1905, p. 83, §5405c Burns 1905) confers authority on the commission to adopt all necessary regulations to govern car service and the transferring and switching of cars from one railroad to another at junction points, to require and supervise the location and construction of sidings and connections between railroads, to supervise the crossing of tracks and side-tracks of railroads by other railroads now in process of

174    APPELLATE COURT OF INDIANA,

Grand Trunk, etc., R. Co. *v.* Railroad Com., etc.—40 Ind. App. 168.

construction or extension, or which may hereafter be constructed or extended, and vests in the commission the authority theretofore vested in the Auditor of State under the laws of the State with reference to the crossing of railroads by other railroads or by railroads operated by electricity, the installation and maintenance of interlocking appliances at such crossings, and the supervision and regulation of private car line service.

Section six of said act (§5405f Burns 1905) provides, among other things: "If any such railroad company, or other corporation or party in interest shall be dissatisfied with any order or regulation of said commission respecting the location or construction of sidings, switches or connections between railroads, or the crossing of one railroad by another, * * * such dissatisfied company or party may, within thirty days after any such order or regulation has been made, file a written petition to the circuit or superior court of the county wherein any such siding, switch, connection, crossing, junction point or private track is situate, setting forth therein the particular cause or causes of objection to the order or regulation of the commission, complained of. * * * After the filing of such petition, and upon proof of the service of the said notice, or upon the appearance of said commission to such petition, the said proceedings shall be set down for hearing without delay, and shall be heard and determined as a suit in equity, without a jury. Any such court shall have power to affirm the action of said commission so complained of or to change, modify, or set aside the same, as justice may require." An opportunity is thus given to those whose rights are affected by the order of the railroad commission in these respects to have the question of their rights heard and determined in a judicial tribunal. This statute should receive a liberal construction in favor of the right of the citizen to have his cause thus heard and determined in court, and we are constrained to hold that the term "any order or regulation * * * re-

specting * * * the crossing of one railroad by another''
is broad enough to include orders made by the railroad
commission .installing interlocking plants for the purpose of
protecting such crossings.

Recognizing appellant's right to a judicial hearing of its
cause, the burden rests upon it to show affirmatively, by the
averment of facts set forth in its petition, that the
3. order of the railroad commission with reference to
the installation of the interlocking switch at the cross-
ing of the two roads mentioned and described in the petition
does it an injustice, or is in some manner unwarranted by
law.

The case does not come before this court on appeal. It
is here as an attack upon the fairness or validity of the
order of the railroad commission, the presumption be-
4. ing that the order is valid, fair, and just to all the
parties. The ground of appellant's complaint against
the order of the railroad commission in installing the inter-
locking switch at the crossing is that the order, so far as
it apportions the cost and expense of installing the device
and maintaining and operating the same, invades the con-
tractual rights of the appellant as against the appellee Monon
Company; that the contract entered into between the prede-
cessors in right, the Chicago & Grand Trunk Western Rail-
way and the Chicago & Indianapolis Air-Line Railway,
places the entire burden of protecting the crossing upon the
appellee Monon Company, and that the order of the
railroad commission, requiring appellant to pay any part of
this expense, is in violation of the appellant's constitutional
right under its contract. This contention is met by the
appellee Monon Company: (1) By the proposition that the
installation of the interlocking switch by the railroad com-
mission is the exercise by it of the police power of the State,
delegated to the commission by the legislature; that the rail-
road commission, in the exercise of this power, is bound by
no private contract between the parties; that the constitu-

tional provisions of the state and federal government, protecting the contractual rights of parties, does not apply to prevent the exercise of the police power of the State; that such contracts cannot be set up against the exercise of such power by the legislature or the authorities to whom the legislature has delegated the power; and that the railroad commission, therefore, in the exercise of this power, is in no way bound to recognize the contract between the two railroad companies respecting the expenses of protecting the crossing. (2) That the contract itself will not bear any such construction as is contended for by appellant; that the terms of the contract preclude the idea that it was in the minds of the contracting parties that such an expense as is involved in the erection, maintenance, and operation of the interlocking switch was intended to be imposed upon or assumed by the Monon Company or its predecessor.

First, of appellee Monon Company's contention that the railroad commission was not bound to recognize said appellee's rights under the contract set up in the petition between the predecessor of the Monon Company and the predecessor of the Grand Trunk Western Railway Company at the time the crossing of the two roads was made —it is undoubtedly the law that private contracts between corporations or natural persons can in no way preclude the legislature from enacting and enforcing laws for the protection of the lives, persons, and morals of the citizens of the State. The right to enact such laws is the right of self-defense that inheres in the State as it does in the individual, and there is no question but that the law regulating the location, erection, and maintenance of interlocking switches at railroad crossings belongs to this class of legislation. But when this is conceded it does not necessarily follow that the contractual rights of the appellant are obliterated. The law itself in nowise interferes with them. It is in the execution of the law, not in its letter or its spirit, that it is contended the appellant's contractual rights

are invaded. The law regulating this subject places its enforcement in the hands of the railroad commission, and, it is true, vests the commission with power and authority to apportion the expenses of the work between the roads interested; but it lays down no rule for their guidance that in anywise trenches on the contractual rights of either road as against the other. It leaves the commission to be guided in the work of apportioning the expense by the general rules of law and justice. It leaves it perfectly free to carry out and enforce the duties and obligations of the roads as between themselves, precisely as a court of justice might enforce these duties and obligations, and we hold that in the performance of this duty the railroad commission is bound by the same rules of law that would govern a court in deciding the same question. The question presented for the commission to determine, as it would be to a court, is what is just and right between the two companies who must bear this expense, and if there is a contract existing between the companies, by the terms of which one of them is in duty bound to bear all the expense, the railroad commission may not properly ignore such contract, and to do so would be good ground for petition to the circuit court for redress.

That it is a police power of the State which the commission executes makes no difference. Where the execution of this power is entirely consistent with the protection of the rights of the citizen under his contract, it must be protected. If it is not so consistent, then the contract must give way to public necessity. But in this case there can be no pretense that the exercise of the police power invoked would be in the least interfered with by the full recognition of appellant's rights under the contract set up in the petition. It could make no possible difference to the public safety whether all of the expense of the installation, maintenance, and operation of the interlocking switching plant to be installed was borne entirely by one of the railroad com-

178    APPELLATE COURT OF INDIANA,

Grand Trunk, etc., R. Co. *v.* Railroad Com., etc.—40 Ind. App. 168.

panies interested, or whether the expense was to be divided between the two. So we hold that, whatever rights the appellant had in the contract set up, it was the duty of the railroad commission to recognize them, and if they have been violated in the order the appellant has a right to redress in the court.

Does the contract set forth in appellant's petition impose upon the appellee Monon Company the burden of paying the expense of installing, maintaining and operating the interlocking switch in question? The stipulations of the contract bearing upon the question are as follows:

8.

"And said party of the second part, in consideration of the right to construct and operate said Chicago & Indianapolis Air-Line Railway across the right of way of said party of the first part, as above granted and set forth, agrees to construct, put in, and maintain good and sufficient frogs and crossings at the point where the track of the Chicago & Indianapolis Air-Line Railway crosses the track of the Chicago & Grand Trunk Railway, as aforesaid, and should the party of the first part, at any time hereafter, construct and lay down additional track or tracks at said point of intersection the party of the second part agrees in like manner to construct, put in, and maintain sufficient frogs and crossings to enable the party of the first part to cross the track or tracks of said second party's railroad. All of which crossings shall be put in at and upon the grade of the railway of the party of the first part, and shall be done in a good and substantial manner, so that the party of the first part shall be able to operate its road at that point with convenience and safety, and that said crossings shall be so maintained and kept in repair by the party of the second part at its individual expense forever."

The first and second clauses of this contract clearly relate simply to the laying of the crossing, not, in any manner, to its protection by signals or guards, and the order of the railroad commission in no way could affect the rights of the parties under this claim of their contract.

The establishment of the interlocker was to guard the

MAY TERM, 1907.          179

Grand Trunk, etc., R. Co. *v.* Railroad Com., etc.—40 Ind. App. 168.

crossing, not in any way to affect its repair or its mainte-
nance. The expression in the second clause, "shall
be done in a good and substantial manner, so that the
party of the first part shall be able to operate its road
at that point with convenience and safety," relates to the
manner in which the crossing shall be put in, and not to the
manner of its being guarded. The only part of the contract
that has reference to the guarding of the crossing is
that section providing for the erection and the mainte-
nance, at the point of intersection, of good and substan-
tial semaphore signals. It would be interpolating into this con-
tract terms which were clearly not in the minds of the par-
ties at the time it was made to hold that it would include in-
terlocking switches and signals erected at far distant points
from the intersection, as are contemplated by the interlock-
ing system, and clearly do not apply to the character of work
that is proposed by the interlocking device. The order of
the railroad commission in directing the installation of the
interlocker at this point recognizes the rights of the
appellant under its contract, and in the very care-
fully-considered order prepared by the commission
they have required the Monon Company to pay first into
the fund, to be used for the operation of this plant, the sum
of $780 before there shall be an apportionment of costs, and
it is not made manifest by the petition that this is not a
fair and just apportionment of the expenses connected with
the installation, maintenance, and operation of this plant,
having in view the rights of the appellant under its contract.
If the contract could be construed so as to require the pay-
ment of all the expenses of the plant by appellee Monon
Company, then the order of the railroad commission would
clearly be an invasion of the rights of the appellant; but the
contract relied upon admits of no such construction.

The judgment of the court below is affirmed.