NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* SINGLETON ET AL.

[No. 26,010. Filed June 14, 1934. Rehearing denied January 9, 1935.]

*John B. Cockrum, Joseph T. Markey, Parr & Parr, Elza Rogers,* and *William J. Stevenson,* for appellant.

*James M. Ogden,* Attorney-General, *Connor D. Ross,* Assistant Attorney-General, *Meade Vestal, Thomas E. Kane, Philip Lutz, Jr.,* Attorney-General, *Herbert J. Patrick,* Deputy Attorney-General, *Cloe, Campbell, Cloe & Cloe,* for appellees.

TREANOR, J.—Appellant commenced this action by filing its complaint in the superior court of Marion county to set aside and declare null and void and to enjoin the enforcement of an order of the Public Service Commission directing appellant to reconstruct and widen its subway underneath its tracks near the city of Noblesville and to submit plans and specifications to the commission for approval or modification.[1] The order of the Public Service Commission was made after the

*Note 1.* "It is therefore ordered by the Public Service Commission of Indiana, that order No. 1581, approved by this Commission January 22, 1916, be and the same is hereby set aside and declared to be of no effect; that protestant's motion to dismiss amended petition herein is hereby overruled; that amended petition herein is hereby found sufficient and is sustained; that description of subway, as found in petition, be and the same is hereby made a part of this order, and that the subway so described is hereby ordered to be reconstructed by the New York, Chicago and St. Louis Railroad Company as directed hereafter in this order.

"It is further ordered that the New York, Chicago and St. Louis Railroad Company be and the same is hereby ordered to prepare plans and specifications for reconstruction of said subway; that said plans and specifications shall provide for such reconstruction as will permit the roadway to pass through said subway over and along the line of the general direction of said roadway the same as naturally would be if the railroad crossing and the subway were not present and to the end that the view of the travelers along and over the traveled portion of said roadway shall not be obstructed by any part of said reconstruction; that said road within the subway shall be not less than 24 feet wide.

"It is further ordered, that said railroad company shall submit plans and specifications to the Public Service Commission of Indiana, in the rooms of the Commission in the State House at Indianapolis, Indiana, not later than 1:30 o'clock P. M., Thursday, June 16, 1927, that said plans and specifications shall be subject to alteration or approval by said Commission upon and after such inspection and examination; and that further order in this cause shall be issued by this Commission to deny, approve or modify the use of said plans and specifications.

"It is further ordered that the New York, Chicago and St. Louis Railroad Company be and the same is hereby ordered to complete the work of reconstructing said subway, as hereinbefore provided, not later than January 1, 1928." A further order denying appellant's motion for rehearing was made.

Commission had held a hearing at which evidence was introduced on behalf of appellant and on behalf of citizens and taxpayers of Hamilton county who had petitioned the Commission to "eliminate the obstruction to said subway crossing."

The cause was venued to the Boone circuit court where trial was held. The only evidence offered, or considered by the trial court, consisted of the transcript of the proceedings before, and evidence heard by, the Public Service Commission. Judgment was rendered for the appellees and that the appellant should take nothing by its complaint. The appeal presents the following alleged errors:

1. The trial court erred in refusing to try the case *de novo* in that it compelled the appellant to present its evidence first to the court.

2. The decision of the court is not sustained by sufficient evidence and is contrary to law.

Appellant contends that the determination of the issue raised by its complaint and appellees' general denial required a trial *de novo* by the Boone circuit court of the case which was before the Commission. In support of its contention it relies upon the case of *Public Service Commission* v. *Cleveland, etc., R. Co.* (1919), 188 Ind. 197, 200, 121 N. E. 116. In that case the Public Service Commission, after a hearing, entered an order classifying a certain railway company as a common carrier and directing it and the appellee company to establish joint rates. The latter succeeded in an action to have the order set aside and on appeal the Commission urged that the decision was contrary to law and not sustained by sufficient evidence. The following excerpt is from the opinion in that case:

"In support of the reasons thus assigned, it is asserted by appellant that the findings of fact made by the Public Service Commission, upon which an

order is based, are conclusive on the court if there is substantial evidence to sustain such findings. It seeks to invoke the same rule in favor of findings of the commission which obtains in courts of appeal and error in favor of the findings of trial courts. This contention cannot be sustained, as it is out of harmony with the entire spirit of the act under which such proceedings are conducted. By §6 of the Railroad Commission Act (Acts of 1913, p. 820, §5536 Burns 1914), it is provided that any carrier or other party, dissatisfied with any final order made by the commission, may, after its ruling on petition for rehearing and within twenty days from the date of such ruling, begin an action against the commission in any court of competent jurisdiction in any county in this state into or through which any carrier operates to suspend or set aside any such order. It is evident that the court in which such an action is brought does not sit as a court of review to correct errors of the commission; but, on the contrary, it is clear that the court in such action shall hear the case *de novo* and determine it from the evidence adduced at the trial. The same section of the act provides that, in all actions in the courts of this state authorized by this act, the rules of evidence shall be the same as in the trial of civil cases as now provided by law, excepting as otherwise provided in this act. Under similar statutes, it has been decided that the court in an action brought to set aside an order of the commission was not bound by the findings of the commission, but that it was the duty of the court to determine the case from a consideration of the evidence adduced. . . .

"It has been frequently decided that the functions vested by the legislature in commissions, such as our Public Service Commission, are not judicial in their nature, but that they are administrative in character. . . . This being true, it follows that the proceedings before such body are not judicial proceedings, and that their orders are not judgments, but are administrative orders. Under the statute a party aggrieved by an order of the commission may file an action in court to have the order annulled and set aside. This affords him his first opportunity to have the facts on which the order rests judicially determined. In reaching a judicial

determination as to the reasonableness or justice of an order the court could not be bound and controlled by the findings of an administrative body as to the facts on which such order was based. . . .

"The fact that there may have been some evidence before the commission to sustain every material fact upon which the order was based could not prevent the court from making such findings as seemed right and just to it after considering and weighing the evidence adduced at the trial; and a decision by the court on a question of fact contrary to that arrived at by the commission would not be contrary to law, even though there may have been substantial evidence to support the finding of the commission."

It is clear from the foregoing that a proceeding in a trial court to review an order of the Public Service Commission is an action *de novo* as distinguished from an appeal; but it does not follow that such proceeding is *de novo* in the sense that the trial court hears and determines on its merits the cause which was heard and determined by the Public Service Commission. The language quoted above from *Public Service Commission* v. *Cleveland, etc., R. Co., supra,* is clarified by later statements of this court respecting the effect to be given to administrative determinations of the Public Service Commission. We quote with approval the following declarations of this court in *In Re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 674, 171 N. E. 65:

"The courts, in reviewing the work of the Commission, must keep in mind that they only have to do with questions calling for judicial interpretation as distinguished from matters administrative. So long as the Commission keeps within the field of regulative powers over the persons or entities over which it has jurisdiction, its orders and actions with reference to such matters must be respected by the courts. The presumption of good faith and valid orders by the Commission must obtain until the contrary is made clear to appear. . . . The

theory of the law creating the Commission is that it shall be conscientiously and impartially administered by a body composed of a personnel especially qualified by knowledge, training and experience pertaining to the subject-matter committed to it for award consonant with reasonable fairness and substantial justice according to the legislative mandate, and the circumstances shown relative to its effect in the future on the utility's ability to serve the interest and convenience of the public, the cost and expense to the parties interested being an element for consideration. . . . So that, whether an appeal was taken by the utilities (petitioners) or by others authorized so to do, the case was triable *de novo* and summarily in the court to which the appeal was taken. Acts 1927, *supra*. The circuit or superior court, on appeal, in the chancery sense, is substituted for the Commission in the examination of evidence certified to it and in the hearing of additional evidence and the finding of facts. The ultimate question for determination is whether the order of the Commission is reasonable or within its power to make. . . . Regulation and legislation are not synonymous terms. As applied to the statute in question, regulation means a reasonable supervision by a legislative authorized agency over the owner of property devoted to a public use, or in case the police power of the state may be invoked."

The effect to be given an order made by the Railroad Commission, prior to the creation of the Public Service Commission, was considered by this court in the case of *Pittsburgh, etc., R. Co.* v. *Railroad Commission* (1908), 171 Ind. 189, 205, 86 N. E. 328, which was an appeal from a judgment adverse to appellant in a suit to enjoin the enforcement of an order of the Commission:

"While it is evident from the framework of the act that it was not the legislative purpose to make the order of the commission conclusive in any given case, where seasonably attacked, yet it is to be remembered that the commission is the chosen agent of the General Assembly for the carrying out of its will, and that, as the commission proceeds upon complaint and notice with an opportunity to the

company to be heard, the presumption in favor of the validity of an order made by the commission for a track connection is strong, and a clear case must be made out to justify the overthrow of its action."

The Appellate Court of Indiana has also considered the question, in the case of *Grand Trunk, etc., R. Co.* v. *Railroad Commission* (1907), 40 Ind. App. 168, 175, 81 N. E. 524:

"Recognizing appellant's right to a judicial hearing of its cause, the burden rests upon it to show affirmatively, by the averment of facts set forth in its petition, that the order of the railroad commission with reference to the installation of the interlocking switch at the crossing of the two roads mentioned and described in the petition does it an injustice, or is in some manner unwarranted by law.

"The case does not come before this court on appeal. It is here as an attack upon the fairness or validity of the order of the railroad commission, the presumption being that the order is valid, fair and just to all the parties."

The expression *de novo* has been given the meaning urged by appellant when applied to the trial of a cause which has been transferred from a justice of the peace court to a superior court; but this meaning necessarily results from the statutory provisions. The act of 1852 (2 R. S. 1852, p. 449, §67) clearly contemplates that when a cause has been transferred from a justice of the peace court to a superior court it shall stand for trial in such superior court as if it had been commenced originally in such court. (*Britton* v. *Fox* [1872], 39 Ind. 369.) In short, no legal effect is given in the trial in a superior court to the trial in the justice of the peace court. But the very purpose of a review of an order of the Public Service Commission is to determine whether legal effect shall be given to it. The fallacy of appellant's contention is indicated by the assumption

that the following proposition applies to a review of an order of the Public Service Commission:

> "An appeal from an inferior court or board to a superior court vacates the judgment or order and requires the case to be tried *de novo.*" (Appellant's brief, p. 112.)

In case of. a review of an order of the Public Service Commission the statute authorizes an action "against the Commission . . . to suspend or set aside any such order." (Section 12819, Burns Ann. Ind. St. 1926, §55-112, Burns 1933, §14452, Baldwin's 1934, Acts 1913, ch. 306, p. 820.) It follows that a suit to "suspend or set aside" an order of the Public Service Commission must be conducted upon the assumption that the order is valid unless and until the contrary is made to appear. The foregoing assumption is confirmed by §84 of the Public Service Commission Act of 1913 (§12755, Burns 1926, §54-439, Burns 1933, §13999, Baldwin's 1934, Acts 1913, ch. 76, p. 193), which reads as follows:

> "In all trials, actions and proceedings arising under the provisions of this act or growing out of the exercise of the authority and powers granted herein to the commission, the burden of proof shall be upon the party adverse to such commission or seeking to set aside any determination, requirement, direction or order of said commission, to show that the determination, requirement, direction or order of the commission complained of is unreasonable or unlawful as the case may be."

We think that the instant case is an "action . . . growing out of the exercise of the authority and powers granted herein (i. e., under the Act of 1913) to the commission." As stated in *In Re Northwestern Indiana Tel. Co., supra,* "the ultimate question for determination is whether the order of the Commission is reasonable or within its power to make."

The burden was upon appellant to show that the de-

termination and order of the Public Service Commission was unreasonable or unlawful; and before a court can say that a determination or order is unreasonable it must appear that there was no substantial evidence to support the findings of fact upon which the determination or order rested. If there is substantial evidence to support the findings, and if the determination or order is one which the Commission has the power to make, in view of the findings, courts must uphold it. This position is in harmony with the following declaration of the Supreme Court of the United States in a recent case:[2]

> "The question of the weight of the evidence was for the Commission and not for the court. . . . The purpose for which the Commission was created was to bring into existence a body which, from its special character, would be best fitted to determine, among other things, whether upon the facts in a given case there is an unjust discrimination against interstate commerce. *United States* v. *Louisville & Nashville R. R. Co.,* 235 U. S. 314, 320. That purpose unquestionably extended to the prohibited discrimination produced by interstate rates. In relation to such a discrimination, as in other matters, when the Commission exercises its authority upon due hearing, as prescribed, and without error in the application of rules of law, its findings of fact supported by substantial evidence are not subject to review. It is not the province of the court to substitute their judgment for that of the Commission."

We hold that the issue before the trial court was the validity of the order of the Public Service Commission and that the burden was upon appellant to show that the order complained of was unreasonable or unlawful. Consequently the trial court did not err in requiring appellant "to assume the burden of proof, or make the opening statement and to intro-

Note 2. *Florida* v. *United States* (1934), 292 U. S. 1, 12, 54 S. Ct. 603, 78 L. Ed. 720.

duce its evidence in this case before the appellee introduced any evidence. . . ." (Appellant's brief, p. 126.)

Appellant introduced as evidence in the trial of this cause the transcript of the evidence received during the hearing before the Public Service Commission ■ and no other evidence was offered. Since the transcript disclosed that there was substantial evidence to support the findings of the Commission the trial court was bound by these findings, there being no other evidence before the court. The transcript also discloses that the order of the Commission was supported by the findings and gave effect thereto; consequently the order was not unreasonable. Nor was it unlawful. In support of this latter conclusion we wish to incorporate into this opinion the following excerpt from the opinion of the Public Service Commission:

"Section 12837, Burns Revised Statutes, 1926, (§55-130, Burns 1933, §14469, Baldwin's 1934), states:

" 'It shall be the duty of said commission to keep informed as to the condition of railroads and railways and the manner in which they operate with reference to the security and accommodation of the public, and as to the compliance of the several corporations with their charters and the laws of the state.'

"Clause (B) of the above section requires this commission to accept jurisdiction over many features of railroad service, including a 'dangerous defect in connection with the operation of any railroad or any railroad bridge, culvert, embankment, water tank, crane, frog, railroad or wagon road crossing,' etc.

" 'It is the duty of a railroad company to maintain all public crossings safe . . . since by Section 5172 Burns 1901, it is the imposed duty of a railroad company to keep and maintain such crossing safe, and this duty cannot be shifted to another.' 163 Ind. 469.

" 'The duty of re-establishing and maintaining at crossings pre-existing safe and convenient situa-

tions is statutory, is an implied covenant of the charter contract, and can not be laid aside or upon the shoulders of another. It is a duty the company can not abdicate while exercising its franchise. Neither can it be said that a railroad company is excused by the construction and maintenance of a crossing which at the time of construction was suitable to public requirements. It must keep pace with the times, with the increase of public travel, with the change of methods, with the improvement of highways, and will not be permitted, by adherence to an old plan, originally adequate, to thwart a general improvement system the public may desire to make for the increased ease and convenience of the traveling public.' 163 Ind. 473.

"A railroad company is authorized by §5153 Burns 1901, to construct its road across a highway only on condition that it restores the highway to its former state, or place it in such condition as not to unnecessarily impair its usefulness and so as not to interfere with the free use of the same, and in such manner as to afford security for life and property. 158 Ind. 191, 192.

\*        \*        \*        \*        \*        \*

"The public does not lose control of public highways by reason of railroad crossing construction. Duties of railroad companies to the public do not end with construction of the crossing. That does not relieve the railroad from necessary, future obligation; the obligation is continuing. The adequacy of the crossing to accommodate the public must be made to meet the reasonable demands of the times. The usual caution required of the public along the highways is as much as can be required in the use of a subway created by a railroad company. Users of the highway have a right to demand the safe use of the ordinary and usual modes of travel, in the ordinary and usual way, using the ordinary and usual degree of caution.

"The subway is at right angles with the railroad track, but at acute angles with the public highway. It is barely eighteen feet wide, but a concrete wall rises at the 18-foot line on either side. A traveled roadway 18 feet wide outside of a subway affords much more room for users of the highway than does the same width in this subway, because the

former permits that part of the vehicle that extends beyond its wheels to extend beyond the traveled roadway without danger. Concrete abutments prevent such leeway.

"The fact that the highway and this subway are not in line with each other forbids to highway travelers the use of all the 18 feet in width in the subway because highway users must change direction while passing through it. Travelers approach subway from an acute angle in one direction and emerge from it over an acute angle in opposite direction.

\*     \*     \*     \*     \*     \*

"The commission holds that the subway should be reconstructed so that the public highway and travelers thereon will be permitted to pass over the highway, through the subway, in a continuous course in the same, continuous general direction that would be followed, naturally and reasonably, if the railroad crossing and subway were not present. The roadway should be not less than 24 feet wide between abutments, all of said roadway being available for use during the entire length of subway.

\*     \*     \*     \*     \*     \*

"While the highway is 40 feet wide and while the concrete abutments are within the right of way of the highway, the commission believes that 24 feet of roadway, all available for vehicle travel, will serve the public sufficiently well and that the additional expense to the protestant would be useless."

We find no reversible error in the action of the trial court.

Judgment affirmed.