NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* PUBLIC SERVICE COMMISSION OF INDIANA.

[No. 26,631.  Filed February 4, 1936.]

*Joseph T. Markey, Harker & Irwin* and *W. J. Stevenson,* for appellant.

*A. B. Cronk, Emsley Johnson, Philip Lutz, Jr.,* Attorney-General, *George W. Hufsmith,* Assistant Attorney-General, *Herbert J. Patrick,* Deputy Attorney-General, and *C. L. Zechiel,* for appellee.

ROLL, C. J.—This is a suit for an injunction. Appellant filed its complaint against appellees in the Superior Court of Marion County. The complaint is in one paragraph and in substances, charges that appellees made and entered an order in October, 1931, in cause No. 9912 wherein the Wright Coal Company was plaintiff and petitioner, the appellant railroad herein was defendant, which said order instructed appellant to charge the said Wright Coal Company certain switching rates which were known as the Indianapolis Switching Rates, and that at the time of said order the Wright Coal Company was located outside of what is known as the switching district of the city of Indianapolis, and outside of the corporate limits of the city of Indianapolis. A copy of said order was filed with and made a part of the complaint. The complaint showed that a petition for a rehearing was filed and overruled and that this complaint was filed within the time allowed by statute.

Appellant says that the order entered herein "is unlawful, illegal, unjust and discriminatory in that it requires and orders the above named plaintiff to charge the same switching rates to the Wright Coal Company, who are located outside the city of Indianapolis as it charges those located within the corporate limits of the city of Indianapolis."

That the switching tariffs on file with the Public Serv-

ice Commission show that the Wright Coal Company is not entitled to the switching rates charged to those who reside within the corporate limits of the city of Indianapolis, but said records show that said Wright Coal Company resides outside of the corporate limits of the city of Indianapolis and is chargeable with the freight rates of what is known as Malott Park, Indiana.

The order of the commission which appellant seeks to enjoin was made by the commission upon a petition filed by the Wright Coal Company, and upon evidence produced at the hearing upon said petition. The order entered by the commission is as follows:

"It is further ordered that said defendant be, and it is hereby notified and required to establish on or before December 1, 1931, upon not less than one day's notice to this Commission and the general public, by filing and posting in the manner as prescribed by law, and thereafter to maintain and apply tariffs which will provide for the extension of the Indianapolis Switching District on said defendant's line to include the Wright Coal Company's track."

In the trial below, a transcript of the evidence introduced at the hearing before the commission was introduced in evidence, and additional evidence was heard by the trial court, which, after hearing all the evidence, found that the order was not unlawful, and denied the injunction. Appellant filed a motion for a new trial which was overruled and appellant appeals assigning as error the overruling of his motion for a new trial. The motion for a new trial is based on the insufficiency of the evidence to support the decision of the court and that the decision is contrary to law.

This action was commenced under the provisions of §24-429, Burns Ind. St. Ann. 1933, Acts 1929, ch. 169, p. 530.

In the recent case of *N. Y. C. & St. L. R. R. Co.* v.

*Singleton* (1934), 207 Ind. 449, 190 N. E. 761, this court said (p. 457):

> "The burden was upon appellant to show that the determination and order of the Public Service Commission was unreasonable or unlawful; and before a court can say that a determination or order is unreasonable it must appear that there was no substantial evidence to support the findings of fact upon which the determination or order rested. If there is substantial evidence to support the findings, and if the determination or order is one which the Commission has the power to make, in view of the findings, courts must uphold it."

Appellant does not contend in this case that the commission had no power to make the order here in question, consequently the sole and only question for our consideration is whether or not there was substantial evidence to support the finding.

This court again expressed itself upon this question in the case of *Public Service Commission* v. *City of LaPorte* (1935), 207 Ind. 462, 466, 193 N. E. 668, in the following language:

> "The only questions presented for the determination of the trial court involve the reasonableness of the commission's order. The court properly tried the case *de novo* under the rules of procedure applicable to the trial of any civil action triable by the court without a jury. The statute provides for the introduction in evidence of a transcript of the proceedings and evidence taken before the commission. This is merely a rule of evidence designed to expedite the trial since the statute contemplates that other and different evidence pertinent to the subject-matter may be heard. In such a case the trial court is not concerned with the question of whether the rates or other orders of the commission are exactly those indicated by the evidence taken before the commission, nor with the question of whether they are the rates and orders which the court would have made under the evidence taken before the commission, if the court were sitting as an administrative commission, nor whether they

are the rates and orders that the court would have made under all the evidence. The court has no rate-making power, and is not concerned with rate-making or other ministerial action except to confine the orders of the commission within reasonable bounds.

"Courts will recognize that the commissioners are selected with a view to their special qualifications, knowledge, training, and experience pertinent to the subject-matter committed to their administration, and that different inferences may be reasonably drawn from given facts; that rates and regulations cannot be fixed with exactness. The power of the commission is not so limited that it is required in its orders to reach the same result that the court would reach under the same circumstances. The law will tolerate any variation from such a result that may be accounted for by reasonable differences in views or opinions. Nor is the sufficiency of the evidence heard by the commission to sustain its findings a true criterion. The commission may make an order upon evidence which, under the rules applicable to judicial proceedings, would be wholly insufficient to sustain the finding, yet if, upon all of the facts and evidence heard by the court (which may differ from and be in addition to the evidence heard by the commission), the order seems reasonable, it will not be enjoined. Nor will the fact that a ruling of the commission seems reasonable, upon the evidence heard by the commission, prevent an injunction, if, upon all of the evidence heard before the court, it is clearly unreasonable."

With these rules of law in mind we will proceed with a consideration of the evidence.

It appears that the Wright Coal Company is engaged in the retail coal business, and its yards are located north and east of the central part of the city of Indianapolis and on the east side of Keystone avenue just outside of the corporate limits of the city, and on the main line of appellant's railroad. That the east corporate limits of the city at this point is on the west line of Keystone avenue, which avenue runs north and south.

That the Wright Coal Company is outside of the Indianapolis switching district, and is grouped for rate-making purposes in the Malott Park district, which district has a higher freight rate than does Indianapolis. That the rate on coal for points located within the Malott Park district is 25 cents higher than the rate to Indianapolis and 50 cents higher on coke. Consequently the Wright Coal Company had to pay more for the coal it received from intrastate shipments than those having their yards within the Indianapolis switching district. The evidence further showed that the switching district includes the switch to the Indiana State Fair Ground and to the Indianapolis Water Works, located about one mile south of the Wright Coal Company's yard with switches leading off from appellant's tracks. That the Indianapolis switching district was originally fixed by the railroad companies themselves and later approved by the commission. The corporate limits of the city played no material part in determining the limits of the Indianapolis switching district, although, in most part, the city limits and the switching district were the same. In several instances the switching district extended beyond the limits of the city, and reached industries outside the corporate limits. The switching district is determined by the location of industries and businesses demanding switching services, and in accordance with the best interest and welfare of the public as well as to the best interest to the railroads themselves. The evidence further shows that the Wright Coal Company sells about 75 per cent of its coal to residents of Indianapolis, and is in competition with retail coal companies whose yards are within the switching district of Indianapolis who by reason thereof pay the Indianapolis freight rate which is 25 cents less per ton on coal and 50 cents less per ton on coke. That there are located some seven retail coal companies from one to two miles

west and northwest of the Wright Coal Company, in what is known as Broad Ripple, within the switching district of Indianapolis, who are located on and served by other railroads, that are in competition with the Wright Coal Company in the retail coal business; that the Wright Coal Company pays from three hundred to four hundred dollars per year more for its coal by being in the Malott Park district, than it would, had it been in the Indianapolis district.

It is further shown by the evidence that under the present arrangement, appellant railroad serves the Wright Coal Company by its road crew, whereas if the order of the commission is permitted to go in effect the Wright Coal Company will be within the Indianapolis switching district and cars billed to the Wright Coal Company will be handled by a switching crew, and at an increased cost to said railroad. That under the present arrangement, freight billed to the Wright Coal Company is billed to Malott Park, and when delivered at appellant's tracks by another company they participate in the freight charges on a through rate basis. But if the Indianapolis switching district is extended to include the Wright Coal Company the appellant railroad will deliver the cars under the reciprocal switching agreement which they say will be less remunerative than the through freight arrangement. That the reciprocal switching rate is not fixed upon a compensatory basis, and is less than the actual cost of the operation. In other words, it will cost appellant more to deliver a car of coal to the Wright Coal Company than they are permitted to charge the delivering carrier under the reciprocal switching agreement, and therefore appellant will suffer an out-of-pocket loss on each car they handle for the Wright Coal Company. The fact that appellant would suffer an out-of-pocket loss on each car switched to the Wright Coal Company under the

reciprocal switching agreement, is not within itself a sufficient basis to declare the order of the commission herein unreasonable or unlawful. Appellant admits that the Indianapolis switching rate is not fixed upon a compensatory basis, and is not intended in all cases to compensate the switching road for its services, and accordingly there will be many instances where the switching road will suffer an out-of-pocket loss on some particular operation. It will not noted that the reciprocal switching rates are not fixed by the commission; it is the voluntary agreement of the roads interested, and may be raised or lowered at any time by mutual agreement. There was no attempt on the part of appellant to show that the order of the commission herein assailed is unreasonable or unlawful and would work an unreasonable hardship on appellant when considered in the light of all switching of cars performed by and for the appellant. It is shown that several competitors of the Wright Coal Company are as far if not farther from the delivery point to their yards than is the Wright Coal Company, and for ought that appears, other railroads performing switching services for appellant suffer a greater out-of-pocket loss in delivering appellant's freight to the various consignees than does appellant in delivering coal to the Wright Coal Company. The evidence clearly shows that the Wright Coal Company is similarly situated as its competitors, as far as location is concerned. It is practically in the same business locality as they; about the same distance from the delivery point as its competitors; it sells coal to persons living in the same general community and for all practical purposes is in the same industrial or business district as its competitors.

It will be observed that the members of the commission are selected with a view of their special qualifica-

tions, knowledge, training and experience pertinent to the subject-matter committed to their administration, and as was said in the case of *Pittsburgh, etc., R. Co.* v. *Railroad Commission* (1908), 171 Ind. 189, 205, 86 N. E. 328, that:

"While it is evident from the framework of the act that it was not the legislative purpose to make the order of the commission conclusive in any given case, where seasonably attacked, yet it is to be remembered that the commission is the chosen agent of the General Assembly for the carrying out of its will, and that, as the commission proceeds upon complaint and notice with an opportunity to the company to be heard, the presumption in favor of the validity of an order made by the commission for a track connection is strong, and a clear case must be made out to justify the overthrow of its action."

It is true that the switching district must terminate within reasonable limits. Its boundaries should be determined by a consideration of all the circumstances and condition of the particular case including the industries located therein, relative mileage, transportation conditions, and commercial competition. It was said in the case of *Metropolitan Coal Co.* v. *Boston and Albany Railroad* (1930), 163 I. C. C. 555, which is a case very similar to the case at bar (p. 559):

"To accord fairly equal services to industries in the same industrial district or community may be said to be one of the primary reasons for maintaining the same general level of rates or charges to all points within that district."

From a consideration of all the evidence we are convinced that the commission based its order upon the well recognized rules above stated and we are unable to say that the order complained of is unreasonable, unjust, or unlawful.

We are of the opinion that the order was supported by substantial evidence and should be affirmed.

Judgment affirmed.