PUBLIC SERVICE COMMISSION OF INDIANA ET AL., ETC. *v.*
INDIANA BELL TELEPHONE CO.

[No. 29,120. Filed December 1, 1955. Rehearing denied
January 10, 1956.]

4

6

*Edwin K. Steers,* Attorney General, and *J. D. Wright,* Deputy Attorney General, for appellants.

*Perry E. O'Neal, Patrick J. Smith, Hyle G. Burke* and *Thompson O'Neal & Smith,* of counsel, all of Indianapolis, for appellee.

BOBBITT, C. J.—A brief history of this litigation may assist in understanding the issues in the present appeal.

On November 21, 1950 appellee filed its petition with appellant, Public Service Commission of Indiana, hereinafter referred to as the Commission, seeking an increase in rates, tolls and charges for its intrastate services. At the conclusion of the hearings on such petition, the Commission entered an order on May 31, 1951 authorizing appellee to place in effect increases of not to exceed $730,000 annually in intrastate exchange telephone rates.

On June 15, 1951, appellee filed its complaint in the Circuit Court of Marion County seeking to vacate, set aside, and enjoin the enforcement of the order of the Commission on the statutory[1] grounds that such order was insufficient, unreasonable, and unlawful, and was procured by unlawful means, and asking that such order

---

1. Sections 54-429 to 54-438, Burns' 1951 Replacement, inclusive.

of the Commission be vacated and set aside and the enforcement thereof enjoined; and further that the Commission be enjoined from interfering with the charging and collecting by plaintiff of rates according to schedules thereof submitted, until the defendants [Commission] shall fix reasonable, adequate and non-confiscatory rates.

After hearing, the Circuit Court, on June 28, 1951, issued a temporary injunction enjoining the enforcement of such order and restraining the Commission from interfering with the charging and collection of rates proposed in a schedule submitted by appellee until the further order of the court; and providing that "if the order of the Commission should not be vacated or set aside or the enforcement thereof enjoined upon the trial herein, or upon the determination of any appeal which may be taken from the judgment entered upon said trial, the plaintiff shall make refund to its subscribers as follows: . . ."

Undertakings and sureties thereon were approved by the court and filed in the cause to assure the making of any refunds which might be required by the order.

On July 6, 1951 appellants petitioned this court for a writ of prohibition and mandate attacking the jurisdiction of the Marion Circuit Court to issue the temporary injunction. The writ was denied, and in *State ex rel. Pub. Serv. Com.* v. *Marion C. Ct.* (1951), 230 Ind. 277, 100 N. E. 2d 888, this court held (p. 289) that the Marion Circuit Court had jurisdiction to hear and determine actions to vacate, set aside or enjoin the enforcement of any decision, ruling or order of the Public Service Commission on the grounds set out in the statute[2] and, further, that

2. Acts 1929, ch. 169, §1, p. 530, being §54-429, Burns' 1951 Repl.

"The power to enjoin the enforcement of an unlawful, insufficient or unreasonable order of the Public Service Commission carries with it the authority to make an order permitting the charging of a schedule of rates sufficient to preserve the solvency of the utility or carrier in *status quo* and to prevent the confiscation of its property, *pendente lite,* by permitting the utility or carrier, during such time, to charge a schedule of rates which are not confiscatory. The order of which respondents complain, does no more than this. It does not attempt to fix rates, but merely permits the petitioner (company) to charge a schedule of rates *pendente lite,* which will permit it to operate, until a final determination of the questions raised by its petition in the trial court, without a day by day confiscation of its property and such as will dispel the probability of incurring an irreparable injury in the event it is successful in finally establishing a higher schedule of rates."

Trial was commenced by the Circuit Court on September 17, 1951. Plaintiff-appellee requested special findings and conclusions and introduced evidence which the court found to be materially different from that offered at the hearing before the Commission.[3]

At the conclusion of the trial the Circuit Court transmitted to the Commission the materially different evidence as provided by statute.[4]

Two days after the transmittal order was entered the Commission rescinded its order of May 31, 1951, and filed motion to dismiss the action in the Circuit Court and to dissolve the temporary restraining order on the ground that it had rescinded the order upon which the court action was based. This motion was overruled and a time fixed for oral argument and filing of briefs.

3. Acts 1929, ch. 169, §8, p. 530, being §54-436, Burns' 1951 Repl.

4. Section 54-436, supra.

After oral argument and the filing of briefs, the court filed its written opinion, special findings and conclusions, and on January 30, 1952, entered its Decree on Permanent Injunction.

An appeal was then prosecuted to this court by appellants herein. Our opinion in that proceeding (*Public Service Comm.* v. *Ind. Bell Tel. Co.* (1953), 232 Ind. 332, 112 N. E. 2d 751) held that the Marion Circuit Court did not have the power to "approve a schedule of rates upon permanent injunction" and the judgment of the trial court insofar as it purported to enjoin permanently the Public Service Commission from interfering with the charging of rates and the collection of revenues as approved by the court was reversed. The provisions of the temporary injunction were continued in force and the cause was remanded to the trial court with instructions to return the same to the Commission "with instructions to consider the new evidence and fix proper rates."[5]

We also said in *Public Service Comm.* v. *Ind. Bell Tel. Co., supra,* (1953), 232 Ind. 332, at p. 349, 112 N. E. 2d 751, "The Marion Circuit Court retains jurisdiction to enforce the necessary features of its temporary injunction until its provisions have found completion."

On July 17, 1953 the Circuit Court transmitted to the Commission all of the new and materially different evidence heard by the court, together with the record in said cause including the special finding of fact and conclusions of law and the written opinion of the Circuit Court.

The Commission was instructed, (1) "to consider the new evidence and fix proper rates" and, (2) upon entering its order, after consideration of the new evidence

---

5. *Public Service Comm* v. *Ind Bell Tel. Co.* (1953), 232 Ind. 332, 348, 112 N. E. 2d 751.

and the record received from the Circuit Court, to certify a copy thereof to the Marion Circuit Court for determination as to whether the provisions of the decree of such court entered on January 30, 1952, "have found completion."

This transmittal order, including all matters which accompanied it, was refused by the Commission which, upon delivery of such order, petitioned this court seeking a clarification of the transmittal order as directed in *Public Service Comm.* v. *Ind. Bell Tel. Co., supra.* Acting upon this petition, we held that the transmittal order of the Circuit Court complied with the mandate in *Public Service Comm.* v. *Ind. Bell Tel. Co., supra.* See: *State ex rel. Public Service Commission et al.* v. *Marion Circuit Court, etc.* (1953), 232 Ind. 561, 114 N. E. 2d 879, 880.

After our denial of clarification, the Commission accepted the transmittal order, including all matters which accompanied it, and two days thereafter (August 6, 1953) entered an order granting an increase in appellee's annual return over that allowed in its original order of May 31, 1951, of $107,525, and certified the same to the Circuit Court.

On August 13, 1953 appellants herein filed their affidavit for a change of venue from the judge. This was denied and judgment[6] entered in accordance with the

6. Omitting formal parts, including findings, the judgment of the Circuit Court from which the present appeal is taken, is as follows:

"It Is Therefore Ordered, Adjudged and Decreed that the said changed Order of the said Public Service Commission of Indiana, dated August 6, 1953, is null and void and is vacated and set aside.

"It Is Further Ordered, Adjudged and Decreed that the provisions of the decree of this court, entered January 30, 1952, which the Supreme Court of Indiana said in its opinion is the decree now in effect in accordance with its opinion rendered on June

provisions of Acts 1929, ch. 169, §9, p. 530, being §54-437, Burns' 1951 Replacement.

The present appeal followed the overruling of appellants' motion for a new trial.

Several questions are presented, and because of their importance we will consider all those which we believe material even though their decision is not necessary in determining this appeal.

*First:* We are immediately confronted with the procedural question of whether the trial court erred in denying appellants' application for a change of venue from the judge.

The manner of selecting a special judge is governed by Rule 1-12 of this court, 1954 edition. Such rule provides:

> "An application for change of judge as now provided by law shall be filed at least ten days before the date set for the trial, or if a date less than ten days in the future is set for the trial, the application shall be filed within two days after the setting of the case for trial."

The trial of this case was commenced on September 17, 1951, and concluded on September 20, 1951. The court's written opinion, special finding of facts, and conclusions of law and its decree of injunction were filed on January 30, 1952. On appeal from this decree a mandate[7] was issued directing the Circuit Court to

---

5, 1953, have not found completion by the changed Order of the Public Service Commission of Indiana dated August 6, 1953.

"It Is Further Ordered, Adjudged and Decreed that the said Public Service Commission of Indiana and its members and agents are and each is hereby enjoined from enforcing or attempting to enforce any of the terms or provisions of its changed Order, dated August 6, 1953."

7. See: *Public Service Comm.* v. *Indiana Bell Tel. Co.* (1953), *supra.*

return the matter to the Commission with instructions to consider the new evidence and fix proper rates; and providing further that the Marion Circuit Court retain jurisdiction to enforce the provisions of the injunction.

No new trial was ordered by this decision, nor did any accrue by reason of this court's opinion. Hence, Acts 1907, ch. 59, §1, p. 85, being §2-1404, Burns' 1946 Replacement, is not applicable here. For the same reason *Compton* v. *Benham* (1909), 44 Ind. App. 51, 85 N. E. 365, and relied upon by appellants lends no support to their position.

No trial was required to determine whether or not the changed order of the Commission complied with the order of transmittal entered by the Marion Circuit Court on July 17, 1953. Nor did the filing by the Commission of its changed order in Cause No. 22, 632, with the Marion Circuit Court on August 6, 1953, present a new cause of action for trial. The filing of this changed order was merely an incident in compliance with the mandate of this court in *Public Service Comm.* v. *Ind. Bell Tel. Co., supra.* Cf: *State ex rel. Keating* v. *Bingham, Judge* (1954), 233 Ind. 504, 121 N. E. 2d 727.

The Commission's act in filing the changed order was performed in fulfillment of an order of court and did not require a trial, within the meaning of that term as used in Rule 1-12 of this court, to determine whether or not the Commission had complied with the order of court.

Appellant's motion for a change of venue was not timely filed, hence it was properly overruled. Rule 1-12 of the Supreme Court of Indiana.

*Second:* The question which this record presents on the merits is: Did the Commission comply with the mandate of this court as transmitted by order of the Marion Circuit Court, "to consider the new [and mate-

rially different] evidence and fix proper rates" for appellee herein? This question is the same as that with which the Marion Circuit Court was confronted when the Commission's changed order was certified to it on August 6, 1953.

Proper rates are those which produce a fair and non-confiscatory return, and such as will enable the company, under efficient management, to maintain its utility property and service to the public, and provide a reasonable return upon the fair value of its used and useful property. *Public Serv. Comm.* v. *Indianapolis Rys.* (1948), 225 Ind. 656, 76 N. E. 2d 841; *Columbus Gas, etc. Co.* v. *Public Service Comm.* (1923), 193 Ind. 399, 140 N. E. 538; *McCardle* v. *Indianapolis Water Co.* (1926), 272 U. S. 400, 71 L. Ed. 316, 47 S. Ct. 144.

*Appellants' position* in this case may be consolidated into two questions.

(1)    That the order of the Commission is sufficient upon its face and the court is without the power to disturb it.

(2)    That the appellee has failed to sustain its burden of establishing that such order was unreasonable and confiscatory.

(1)    We shall first consider the question of the burden of proof.

The order made by the Commission-appellant on August 6, 1953, was in response to the court's instruction and the Circuit Court could determine from the findings of the Commission whether the rates fixed therein are proper and comply with its July 17, 1953 order of transmittal. This the court has done.

While it is true, as a general rule, as appellants assert, that rates fixed by the Commission are presumed

to be lawful, Acts 1913, ch. 76, §77, p. 167, being §54-428, Burns' 1951 Replacement, and the burden is upon the complainant to show that the determination and order of the Commission was unreasonable or unlawful, *N. Y. C. & St. L. R. R. Co.* v. *Public Service Comm.* (1936), 209 Ind. 466, 199 N. E. 573, however, this rule is not applicable here because of the circumstances under which the order of August 6, 1953 was made.

(2)   Appellants correctly assert that as a general rule the trial court may not weigh the evidence and substitute its discretion for that of the Commission. *Public Service Comm.* v. *City of LaPorte* (1935), 207 Ind. 462, 193 N. E. 668; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399. Neither can the court as a general rule disturb the findings of the Commission where it has conformed to statutory procedural methods and where its decision is supported by substantial evidence. However, an exception to this general rule occurs where, as here, the order is being questioned as confiscatory. *Pub. Ser. Com.* v. *Ind'p'ls Railways* (1947), 225 Ind. 30, 72 N. E. 2d 434; *Ohio Valley Water Co.* v. *Ben Avon Borough* (1920), 253 U. S. 287, 64 L. Ed. 908, 40 S. Ct. 527; *St. Joseph Stock Yards Co.* v. *United States* (1936), 298 U. S. 38, 80 L. Ed. 1033, 56 S. Ct. 720.

Hence, where a rate established by the Commission is attacked as confiscatory, the court may, upon its own independent judgment, review that issue as to both law and facts, to the end that constitutional rights may be protected. *Public Service Commission* v. *Ind. Bell Tel. Co.* (1953), 232 Ind. 332, 347, 112 N. E. 2d 751, *supra; Public Serv. Comm.* v. *Indianapolis*

*Rys.* (1948), 225 Ind. 656, 76 N. E. 2d 841, *supra;
Staten Island Edison Corporation* v. *Maltbie* (1947),
296 N. Y. 374, 73 N. E. 2d 705, 707, 8 A. L. R. 2d 825;
*Opinion of the Justices* (1952), 328 Mass. 679, 106
N. E. 2d 259, and cases there cited; *St. Joseph Stock
Yards Co.* v. *United States* (1936), 298 U. S. 38, 80
L. Ed. 1033, 56 S. Ct. 720, *supra; Ohio Valley Water
Co.* v. *Ben Avon Borough* (1920), 253 U. S. 287, 64
L. Ed. 908, 40 S. Ct. 527, *supra.*

In *Public Serv. Comm.* v. *Indianapolis Rys., supra,*
this court had before it a proceeding similar to the one
at bar, and at page 661 of 225 Ind., it said:

> "The commission was enjoined from interfer-
> ing with the emergency rates until it fixed rates
> that were not unreasonable or confiscatory. If the
> court were prohibited from granting such relief,
> it would mean that property could be taken without
> just compensation, and that there would be no re-
> lief from an order of the commission fixing rates
> excepting to enjoin its enforcement. Equity has
> never been that helpless. The court had the right
> to examine the rates fixed by the commission and
> to determine whether or not they were unreason-
> able and confiscatory. It is evident that if the
> court did find such rates to be confiscatory, it then
> could examine the higher rates, a schedule of
> which had been filed with the commission. If the
> court believed that any rates lower than the rates
> thus requested and refused would be unreasonable
> and confiscatory, it had the power to protect the
> property of the appellee from such dire results
> by enjoining the setting of any rates lower than
> those requested and refused."

We believe this is a correct statement of the powers
of the court under such circumstances.

If the Circuit Court had the power to declare the rates
fixed by the Commission in its order of May 31, 1951

unlawful and confiscatory, it must follow that it had the right to consider the evidence before the Commission, together with the new and materially different evidence submitted at the trial which was concluded on September 20, 1951 for the purpose of determining that question. It could not do so in any other manner. *Public Service Commission* v. *Frazee* (1919), 188 Ind. 573, 122 N. E. 328; *City of New Albany* v. *Public Service Comm.* (1923), 193 Ind. 416, 140 N. E. 433.

When the Circuit Court found the schedule of rates fixed by the Commission in its August 6, 1953 order would produce a return less than that which the court had, after proper consideration, found to be necessary to avoid confiscation, it had the power, in the exercise of its duty to prevent the unlawful taking of property, to enjoin permanently the setting and enforcement of such rates. *Public Service Comm.* v. *Indianapolis Rys.* (1948), 225 Ind. 656, 661, 76 N. E. 2d 841, *supra;* See also: 43 Am. Jur., Public Utilities and Services, §185, p. 693.

In the case at bar the Circuit Court, by its decree of January 30, 1952, prohibiting the Commission from interfering with the collection of the schedule of rates submitted by appellee, must be deemed to have determined that such schedule provided the minimum rates necessary to avoid confiscation. Since the rates fixed by the Commission in its changed order of August 6, 1953, were lower than those submitted and found to be the minimum necessary to avoid confiscation, the court had the power to enjoin permanently their enforcement.

While, as we said in *Public Service Comm.* v. *Ind. Bell Tel. Co., supra* (1953), 232 Ind. 332, at p. 346, 112

N. E. 2d 751, a court does not have "the power to *approve* a schedule of rates upon permanent injunction,"; it does, however, have the power and duty to enjoin permanently the enforcement of a schedule of rates which it has found to be confiscatory. (Our italic.)

Acts 1929, ch. 169, §1, p. 530, being §54-429, Burns' 1951 Replacement.

Both, the Bill of Rights of the Indiana Constitution, Article 1, §12, and the 14th Amendment to the Federal Constitution guarantee to an owner who alleges that a confiscation of his property will result from a rate order of the Commission, a fair opportunity for submitting that issue to a court for review upon its own independent judgment as to both law and facts, and §§54-429 to 54-438, Burns' 1951 Replacement, inclusive, under which this action is brought, afford a remedy adequate to enforce that right.

The power of the courts in actions such as this now before us may be summarized as follows: Courts do not have the power to revise or change a schedule of rates imposed by the Public Service Commission; they do not determine whether one rate is preferable to another, nor do they perform mere ministerial duties. However, they do possess the power and have the duty to inquire whether a schedule of rates prescribed by the Commission is unlawful, insufficient or unreasonable and such as result in a confiscation of property, and, if so found, to restrain its enforcement.

The Marion Circuit Court had the power to grant relief to appellee herein despite the fact that appellants rescinded their order of May 31, 1951, and after proceedings had as above recited, had also entered its changed order of August 6, 1953. *Colum-*

*bus Gas, etc. Co.* v. *Public Service Comm.* (1923), 193 Ind. 399, 140 N. E. 538, *supra.*

*Appellee asserts* (1) the schedule of rates fixed in the changed order of the Commission issued on August 6, 1953, is confiscatory; (2) the findings of facts upon which such order is founded are not based on evidence before the Commission; (3) such findings are inadequate; and (4) the action of the Commission in determining the schedule of rates fixed by its order of August 6, 1953, was arbitrary.

The special finding of facts and conclusions of law filed by the Circuit Court on January 25, 1952, and its written opinion are a part of the record in the present appeal and since they were approved by the action of this court in *Public Service Comm.* v. *Ind. Bell Tel. Co.* (1953), 232 Ind. 332, 112 N. E. 2d 751, *supra,* they are now a part of the law of the case; *Todd* v. *State* (1951), 229 Ind. 664, 688, 101 N. E. 2d 45; *Soderling* v. *Standard Oil Co.* (1950), 229 Ind. 47, 95 N. E. 2d 298; *New York Life Ins. Co.* v. *Kuhlenschmidt* (1941), 218 Ind. 404, 33 N. E. 2d 340, 135 A. L. R. 397; and we accept such facts as found.

(1) In its order of May 31, 1951, the Commission found the fair value of appellee's property, used and useful in intrastate business, to be $90,500,000, and the just rate of return on such value to be 6%, based upon the averages for the calendar year of 1950, thus providing a gross annual income applicable to return of $5,430,000. It further found that by applying the rate of 6% return on a rate base of $90,500,000 there would be a deficiency of $380,000 in appellee's earnings, and that by reason thereof it should be permitted to increase its subscriber rates in a gross amount not exceeding $730,000 annually.

In its changed order of August 6, 1953, the Commission found the fair value of appellee's intrastate property, also based upon the averages for 1950, and by using the "Charleston Method" of separation, to be $94,792,091, and that a fair return upon this value is $5,537,525.[8] This return was produced by applying a rate of 5.84% to the fair value as found by the Commission.

The Marion Circuit Court at the trial in September, 1951, after consideration of new evidence,[9] together with that received from the Commission found:

(1) Appellee's annual gross intrastate revenue as of December 31, 1950, to be $41,032,355;

(2) The annual intrastate operating expenses as of December 31, 1950, to be $35,037,026;

(3) Due to certain adjustments considered in finding number 16, because of changes in wages, taxes and other items, the annual intrastate expenses would be increased over actual experience by $1,196,834;

(4) Wage increases since January 1, 1951, have added approximately $2,176,294 to appellee's annual wage expense, which, after deduction for federal taxes, leaves a net additional intrastate expense of $1,044,621;

(5) Court's finding number 16 giving detailed items is as follows:

"16. Changes occurred during 1950 in some items of intrastate expense; and others became certainly in prospect during the year. Still others have since occurred and are and will remain effec-

8. 5.84% on $94,792,091 is, according to our figures, $5,535,858, and not $5,537,525. However, the latter figure is used because it is the one which appears in the transcript and briefs.

9. For right of court to consider the new evidence see: *Public Service Commission* v. *Frazee* (1919), 188 Ind. 573, 122 N. E. 328; *City of New Albany* v. *Public Service Comm.* (1923), 193 Ind. 416, 140 N. E. 433.

tive. Two adjustments which, strictly, do not involve changes in experience are required. It is necessary to adjust plaintiff's actual 1950 expenses for all such changes in order properly to determine plaintiff's going rate of intrastate expense.

"(a) Plaintiff's casualty expense results primarily from storm damage. It varies from year to year, so the average of a period, except by coincidence, is more reliable than the experience of a single year. Its average annual intrastate casualty expense for the five years ended with 1950 was $34,987 less than for 1950 alone, so plaintiff's intrastate expense should be credited with $34,987.

"(b) Rate case expense normally does not occur every year and it is proper to amortize such expense over a period of years. Plaintiff has engaged in three rate cases in less than four years and the undisputed evidence shows that the end of such expense is not immediately in prospect. Therefore it is found that plaintiff properly amortized its rate case expense on a three-year basis and increased its actual 1950 expense of that kind by $419.

"(c) As of May 14, 1950, the wage rates of plaintiff's employees were increased. If said increase had been in effect throughout the entire year, plaintiff's additional annual intrastate wage expense would have been $88,562.

"(d) As mentioned in finding 13, above, plaintiff's intrastate rates were increased on September 5, 1950. Such additional revenue would have entailed additional expense for Indiana gross income taxes and for license contract expense by $40,675.

"(e) A change in Federal social security laws effective January 1, 1951, would have increased social security taxes by $14,490.

"(f) During 1950 plaintiff accrued funds at the rate of 6.76% of payroll for the payment of future pensions to its employees. For 1951 plaintiff actuarially determined the rate to be 6.65%. For that reason and due to a reduction in the assumed rate of earning on its pension fund plaintiff credited expense with $23,860.

"(g) The net effect of all adjustments to revenue and expense hereinbefore found was a net in-

crease in revenue and adjustments over expense adjustments of $1,722,464, which would have entailed additional Federal taxes on income, at 47%, of $809,558.

"(h)  During 1950 Federal taxation of plaintiff's income was accounted for at the rate of 42%. Before the end of the year the rate had been increased to 47%. Proper adjustment of taxes on account of the increase in rates would have increased plaintiff's taxes by $301,977.

"(i)  The adjustments considered so far in this finding 16 would have increased annual intrastate expense over 1950 actual experience by $1,196,834, or at the rate of $2.11 per average telephone in service during 1950. On the basis of 584,340 telephones in service on December 31, 1950, the increase in annual intrastate expense would have been $1,232,957; partially adjusted annual intrastate expense would have been $36,269,983; and partially adjusted going rate of annual intrastate earnings would have been $4,762,372."

(6)  Making further adjustments necessary because of wages in Item 4 above and the increase in federal taxes from 47% to 52%, and taking into account a reduction in depreciation rates since January 1, 1951, appellee's "going and reasonable rate of annual intrastate operating expense and taxes" is $37,703,935 as of September, 1951;

(7)  Deducting the going rate of annual intrastate expenses from the going rate of annual intrastate revenues, the gross annual intrastate earnings applicable to return are $3,328,420;

(8)  Upon all the evidence the fair value of appellee's property, used and useful in providing intrastate service, is not less than $110,000,000.

(9)  A return of $3,328,420 on a valuation of $110,000,000 provides a rate of return of not more than $3.03%.

(10)   That a rate of return of 3.03% is unreasonably low, insufficient and confiscatory; and

(11)   The court further found that a return of 6% on a valuation of $110,000,000 was the minimum necessary to provide appellee with a reasonable non-confiscatory return on its used and useful intrastate property.

The Circuit Court having found that $6,660,000 was the minimum annual net earnings necessary under all the evidence to avoid confiscation of appellee's property, it could reasonably have found that an annual net return of $5,537,525, which would produce $1,062,475 per year, less net earnings, would be confiscatory.

From the foregoing it is our conclusion that there is substantial evidence to support the trial court's finding that the schedule of rates fixed in the August 6, 1953, order of the Commission is confiscatory.

(2) (3)   Are the findings of the Commission supported by evidence in the record, and are they adequate?

The law is well settled in Indiana that "if there is substantial evidence to support the findings, and if the determination or order is one which the Commission has the power to make, in view of the findings, courts must uphold it;" *N. Y. C. & St. L. R. R. Co.* v. *Singleton* (1935), 207 Ind. 449, 458, 190 N. E. 761; and, further, in *Public Service Commission* v. *City of LaPorte, supra* (1935), 207 Ind. 462, at p. 466, 193 N. E. 668, this court said:

". . . the trial court is not concerned with the question of whether the rates or other orders of the commission are exactly those indicated by the evidence taken before the commission, nor with the question of whether they are the rates and orders which the court would have made under the evidence taken before the commission, if the court were sitting as an administrative commission, nor whether they are the rates and orders that the court would have made under all the evidence. The

court has no rate-making power, and is not concerned with rate-making or other ministerial action except to confine the orders of the commission within reasonable bounds."

The law is equally well settled that "an order of the Commission must be founded upon facts found by the Commission based upon substantial evidence." *Pub. Serv. Comm.* v. *Ft. Wayne U. Ry. Co.* (1953), 232 Ind. 82, 111 N. E. 2d 719; *Kosciusko County, etc.* v. *Public Service Comm.* (1948), 225 Ind. 666, 672, 77 N. E. 2d 572, and cases there cited.

Finding number 3 of the Commission pertaining to separation method, is as follows:

"Since the original order was entered in this cause the National Association of Railroad and Utilities Commissioners' Committee, together with the Bell System, has agreed upon what is now known as the 'Charleston Method of Separation,' which appears to produce a result only slightly different from that produced by the method set forth and previously described as 'Honaker Method No. 1.' This Commission is now of the opinion that the new 'Charleston Method' is the best that has yet been promulgated, and gives a more equitable result to the petitioner and to the public, and it has, therefore, been used by the Commission for the separation of the properties and expenses of the Indiana Bell Telephone Company as between its interstate and intrastate operations in this order."

There is no evidence in the record concerning the "Charleston Method", nor are we able from a careful consideration of the entire finding, to determine what such method is; what is its formula of classification of interstate and intrastate property; to what properties and expenses it was applied, or how and by what system of allocation or division the fair value of appellee's intrastate property was determined to be $94,792,091.

This finding is not only unsupported by evidence, but is clearly inadequate and improper in that neither the Marion Circuit Court nor this court can ascertain from such finding how the fair value of appellee's intrastate property was determined. *Public Serv. Comm.* v. *Ft. Wayne U. Ry. Co., supra* (1953), 232 Ind. 82, 96, 111 N. E. 2d 719.

We find no evidence to support the finding as to the amount of capital and surplus of A. T. & T. for the years 1924, 1945 and 1951, which are set out in the Commission's finding No. 4.

Finding number 4 further recites that there was no time during the expansion years of December 31, 1945, to December 31, 1951, that the A. T. & T. could not raise additional capital. This statement, even if based upon substantial evidence, which we have been unable to find in the record, does not establish as a fact that appellee herein, which is an Indiana corporation having its own separate identity even though a part of the general Bell System, would be able to raise additional revenue on a rate of return as fixed in the August 6, 1953, order of the Commission.

We find no substantial evidence which might be properly considered to establish that a rate of income of 5.84% on a fair value of $94,792,091 is sufficient to attract new capital to *appellee*.

No evidence was introduced either before the court or before the Commission after September 20, 1951. Under this state of the record it is evident that the findings of the Commission, that appellee's "capital which aggregated $95,825,000 at the end of 1951, was all supplied by A. T. & T. with the exception of 12 shares of common stock having an aggregate par value of $1,200 . . . ;" and that "the earnings of the Bell System applicable to A. T. & T. exceeded the $9 dividend

on that stock" during the two years 1950 and 1951, were based upon appellants' information and not upon evidence which appears in the record.

In a matter such as the action at bar the Commission cannot act on its own independent information, but must base its findings upon evidence presented in the case, with an opportunity to cross-examine witnesses, to inspect documents or exhibits, and to offer evidence in explanation or rebuttal and nothing can be treated as evidence which has not been introduced as such. *Public Serv. Comm.* v. *Ft. Wayne U. Ry. Co., supra* (1953), 232 Ind. 82, 96, 111 N. E. 2d 719; *Atchison, T. & S. F. Ry. Co.* v. *Commerce Commission* (1929), 335 Ill. 624, 167 N. E. 831, 837; *Ohio Bell. Teleph. Co.* v. *Public Utilities Comm.* (1937), 301 U. S. 292, 81 L. Ed. 1093, 1099, 57 S. Ct. 724.

The order of the Commission not only must be founded upon facts specially found by the Commission, but such facts must be based upon substantial evidence. *Public Serv. Comm.* v. *Ft. Wayne U. Ry. Co., supra.*

The findings must be sufficiently specific to enable the court to review intelligently the Commission's decisions. *Public Serv. Comm.* v. *Ft. Wayne U. Ry. Co., supra.*

That part of finding number 3 which states that, "This Commission is now of the opinion that the new Charleston Method is the best that has yet been promulgated, and gives a more equitable result to the petitioner [appellee] and to the public, and it has, therefore, been used by the Commission for the separation of the properties and expenses of the Indiana Bell Telephone Company as between its interstate and intrastate operations in this order," (August 6, 1953), is a conclusion drawn by the Commission. It

is not a finding of fact upon which an order could be based. *Kosciusko County, etc.* v. *Public Service Comm.,* *supra* (1948), 225 Ind. 666, 72 N. E. 2d 572.

From the foregoing we must conclude that the order of the Commission issued on August 6, 1953, is not based upon appropriate findings and does not rest upon substantial evidence. It is, therefore, unlawful and its enforcement may be enjoined for this further reason.

(4)   Is the Commission's changed order arbitrary and hence unlawful?

It is apparent from a consideration of the evidence and of all the findings in the changed order of August 6, 1953, that the Commission considered the amount necessary to enable appellee to contribute its share to the over-all return required by the parent company, A. T. & T., and fixed its annual return accordingly.

Appellee is entitled to a fair return upon its intrastate property actually used and useful for the convenience of the public, without regard to the amount of contribution by way of dividends on its stock, and other reasonable charges which it pays annually to the parent company, A. T. & T.

Appellee is an Indiana corporation, a separate and distinct utility as defined by statute[10] and it is the duty of the Commission to establish for it a schedule of rates which will produce a fair and non-confiscatory return upon its used and useful intrastate property, whether its stockholders are one or many, and without regard to its relationship to other companies.

The fact that appellee has not used its own credit with which to raise additional capital is immaterial,

10.   Acts 1947, ch. 318, §1, p. 1267, being §54-105, Burns' 1951 Replacement.

and its ability to do so cannot be measured by the yardstick of the ability of the parent company to raise additional capital. The intrastate properties and operations of appellee are the ones to be considered in fixing a fair rate of return upon its used and useful property and not those of the entire Bell System.

The acts of appellants in considering the cost of money to the parent company, A. T. & T., and the "entire Bell System" rather than considering only the properties and operations of appellee is in violation of Acts 1947, ch. 307, §1, p. 1251, being §54-203, Burns' 1951 Replacement, and is unlawful.

The Commission in its original order found:

> "The Commission is of the opinion, as it was when it drafted its order approved on September 5, 1950, in Cause No. 20167, that Petitioner would have realized a substantial tax saving and a corresponding increase in its earnings if it had had a capital structure of one-third debt and two-thirds equity, which the Commission finds to be a reasonably sound capital structure.
>
> "The Commission, therefore, finds that Petitioner's earnings should be adjusted accordingly assuming a one-third debt and two-thirds equity capital structure.";

and in accordance with this finding the sum of $334,935 of federal taxes was disallowed. The Commission computed appellee's earnings for 1950, after deduction for federal income taxes, interest and dividends, at $4,718,129, to which amount they added the theoretical tax saving of $334,935, and found appellee's earnings to be $5,053,064. This had the effect of depriving appellee of that amount of income to which it was entitled. Appellants could not arbitrarily disallow federal taxes which appellee had paid, or was obligated to pay, by assuming a tax saving under a cap-

ital structure which did not exist. This action was both arbitrary and unlawful.

*Third:* Did the July 17, 1953, order of transmittal "find completion" in the Commission's order of August 6, 1953?

This question must be answered in the negative for the following reasons:

(1) The rate of return allowed appellee by such order is less than that determined by the trial court to be the minimum necessary to provide a reasonable and non-confiscatory return;

(2) The Commission found the fair annual return to appellee to be $5,537,525. In its order of May 31, 1951, which the Marion Circuit Court first found to be unreasonable and confiscatory, the Commission found the fair annual return to appellee to be $5,430,000. The effect then of its changed order of August 6, 1953, was to increase the net annual return by the sum of $107,525.

Among the new and materially different evidence introduced at the trial and transmitted to the Commission for its consideration were the following items:

1. A net increase in the total annual intrastate wage expense which occurred by reason of increases in salaries and wages in 1951 in the amount of $1,044,621.

2. An increase in federal income taxes due to an increase in rate of from 47% to 52%, making a net additional annual intrastate expense of $449,280.

3. A net reduction in intrastate depreciation expense of $59,949.

This evidence was all properly admitted and considered by the court. *Public Service Commission* v. *Frazee, supra* (1919), 188 Ind. 573, 576, 122 N. E. 328; *City of*

*New Albany* v. *Public Service Comm., supra* (1923), 193 Ind. 416, 140 N. E. 433.

There is nothing in the finding of the Commission upon which the changed order is based to show that it gave any consideration whatever to the items of new evidence above mentioned.

Since the changed order granted an increase of only $107,525 over their original order entered on May 31, 1951, it is clearly apparent from the Commission's findings that it completely ignored an actual net annual increase in appellee's intrastate expense of $1,433,952 which had occurred since its hearing which commenced on January 8, 1951, and concluded on May 4, 1951, and was a part of the new and materially different evidence produced at the trial in the Marion Circuit Court.

This action of the Commission was, in our opinion, arbitrary and unlawful and wholly failed to consider or to comply with the July 17, 1953, transmittal order of the Marion Circuit Court.

The purpose of the statute creating the Public Service Commission and defining its powers and duties, is the supervision and regulation of public utilities within the state. It is designed to supply the missing element of competition which protects the public from excessive charges in competitive businesses. It is the duty of the Commission to see that the rates charged are fair and reasonable, both to the consumers and the utility.

However, the power to regulate is not the power to destroy, and the limitation which the Public Service Commission may impose upon public utilities in the fixing of rates and charges is not the equivalent of confiscation. The Public Service Commission, acting within the scope of its delegated powers, cannot require appellee to furnish telephone service to the public

without just and reasonable compensation, nor can it enforce an order which results in a piecemeal confiscation of private property for public use.

The Commission has failed to comply with the July 17, 1953, order of the Marion Circuit Court, and for this and other reasons above set out the judgment of the trial court dated August 13, 1953, and from which this appeal is prosecuted, should be in all things affirmed.

Judgment affirmed.

Achor and Landis, JJ., concur.

Emmert, J., concurs with opinion.

Arterburn, J., not participating.

## CONCURRING OPINION

EMMERT, J.—In agreeing that the judgment of the trial court should be affirmed, I would not be understood as believing that the trial court had jurisdiction to enter the temporary injunction it did on June 28, 1951. *State ex rel. Pub. Serv. Comm.* v. *Marion C. Ct.* (1951), 230 Ind. 277, 100 N. E. 2d 888, dissenting opinion 230 Ind. 277, 103 N. E. 2d 214. Later this court, speaking by Judge Flanagan in *Public Service Comm.* v. *Ind. Bell. Tel. Co.* (1953), 232 Ind. 332, 334, 112 N. E. 2d 751, clearly held that the trial court could not fix utility rates. The same opinion, after quoting Article III of our Constitution,[1] stated, "No exception is involved in this case." If the trial court had no power to fix rates on a permanent injunction, it logically follows it had no jurisdic-

---

1. "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided." Article III, Constitution of Indiana.

tion to fix rates on a temporary injunction. However, the majority decision on the temporary injunction became and is the law of the case, and binding on this court in all subsequent appeals involving this controversy. *State ex rel. Joint Co. Park Bd.* v. *Verbarg* (1950), 228 Ind. 280, 282, 91 N. E. 2d 916. The temporary injunction obtained its validity by reason of this court deciding, by a four to one vote, that it was valid, and not because it did not violate Article III of our Constitution. But this decision will not be the law of the case when and if other appeals not involving this particular controversy may come before this court. A reexamination of the constitutional issues will then be in order.

In the present appeal now under consideration the trial court independently made its own judicial inquiry into the fair value of the property used and useful in Bell's intrastate business, what would be a reasonable and just rate of return on such a valuation, and its reasonable intrastate operating expenses. This appears from the trial court's special finding of facts and conclusions of law. The Commission is not at liberty to disregard or overrule the court's special finding of facts and conclusions of law. When the matter was returned to the Commission in compliance with our mandate of June 5, 1953, it was the duty of the Commission to fix proper rates. Since this was not done, the judgment of the trial court should be affirmed.

NOTE.—Reported in 130 N. E. 2d 467.