NORTHERN INDIANA PUBLIC
SERVICE COMPANY,
Appellant,

v.

CITIZENS ACTION COALITION OF IN-
DIANA, INC., City of Gary, Indiana,
City of Hammond, Indiana, Inland
Steel Company, National Steel Corpo-
ration (Midwest Steel Division), Union
Carbide Corporation, Jones & Laughlin
Steel, Inc., Jones & Laughlin Steel Cor-
poration Division, Bailly Alliance,
United States Steel Corporation, Beth-
lehem Steel Corporation, Indiana Asso-
ciation of Cities and Towns and Office
of the Utility Consumer Counselor, Ap-
pellees.

No. 93S02–8603–EX–226.

Supreme Court of Indiana.

May 28, 1986.

Frederick F. Eichhorn, Jr., Peter L. Hatton, James K. Morse, Charles W. Webster, Eichhorn, Eichhorn & Link, Hammond, for Northern Indiana Public Service Co.

Linley E. Pearson, Atty. Gen., Robert K. Johnson, Deputy Atty. Gen., Indianapolis, for appellees.

DeBRULER, Justice.

This Court ordered the Public Service Commission of Indiana (PSCI) in *Citizens Action Coalition, et al. v. Northern Indiana Public Service Company, et al.* (1985), Ind., 485 N.E.2d 610 to vacate that part of its order which authorized the amortization of the sunk costs of the Bailly N–1 project as being contrary to law. On February 5, 1986, the PSCI ordered NIPSCO to reduce its rates by an amount attributable to the unlawful recovery of the sunk costs of the Bailly N–1 project. In addition, the PSCI issued an interim order which set for hearing the issues of the amount and the manner of the resulting refund due to ratepayers from previously collected amounts attributable to amortization. Even though this previously collected amount far exceeds the expenses attributable to "... planning, analysis, and investigation of the Bailly project, associated with both the decision to build and the decision to cancel ..", concurring opinion of Shepard, J., dissenting opinions of Givan, C.J. and Prentice, J., and thus subsumed in the refund procedure and determination, NIPSCO refused to file tariffs which would have reduced its revenue collections in accord with the PSCI order. On February 21, 1986, NIPSCO appealed the PSCI order to the Second District of the Court of Appeals. The PSCI filed in the Second District of the Court of Appeals a Verified Application for an Order Mandating Compliance Pending Appeal. On March 7, 1986, the Court of Appeals, after examining the case, concluded that the appeal involves a substantial question of law of great public importance and that an emergency exists for the appeal's speedy determination; consequently, the Court of Appeals ordered it transferred to this Court.

We grant transfer in order to consider the issues raised and in order to guarantee the integrity of legitimate orders issued from this Court.

The issues are set forth here:

(1) whether NIPSCO is entitled to a hearing pursuant to I.C. § 8–1–2–72 before the PSCI enforces this Court's order to vacate the PSCI's previous order allowing amortization of the sunk costs of the Bailly N–1 project;

(2) whether NIPSCO is entitled to a stay of rate pending appeal pursuant to I.C. § 8–1–3–6.

## I

■ NIPSCO argues that the United States Constitution, the Indiana Constitution, and I.C. § 8–1–2–72 require the PSCI to hold a hearing on the matter of excising the Bailly N–1 amortization from its rates. NIPSCO claims that the PSCI denied it due process of law by not holding a hearing on the matter.

I.C. § 8–1–2–72 is set forth here:

8–1–2–72 [54–427]. Rescission or amendment of orders. The commission may, at any time, upon notice to the public utility and after opportunity to be heard as provided in sections fifty-seven to seventy-one [8–1–2–54—8–1–2–67], rescind, alter or amend any order fixing any rate or rates, tolls, charges or schedules, or any other order made by the commission, and certified copies of the same shall be served and take effect as herein provided for original orders, [Acts 1913, ch, 76, p. 167.]

This statute has several purposes, First, it guarantees the public utility due process of law by granting the public utility notice and an opportunity to be heard. Second, it facilitates judicial review of PSCI actions that "rescind, alter or amend any order fixing any rates ..." by providing for a hearing on the record, see I.C. § 8–1–2–65, for such actions.

■ This statute does not apply to the situation here; consequently, NIPSCO is

not entitled to another hearing. A hearing has already been held in this matter. (PSCI order cause no. 36689 September 28, 1982). There NIPSCO was able to present all the evidence pertinent to its contention that the sunk costs of the Bailly N–1 project were recoverable from the ratepayers. Furthermore, the pertinent portion of the order emanating from such hearing has already been subjected to judicial review, *CAC et al. v. NIPSCO et. al., supra,* and has been declared contrary to law.

■ The PSCI's excision of the unlawful portion of the rates, which were the product of the PSCI's order in cause No. 36689, pursuant to an order of this Court is not contemplated by I.C. § 8–1–2–72. The statute applies only to orders originally issued by the PSCI, not to orders issued by the PSCI pursuant to this Court's mandate. To hold otherwise would effectively destroy this Court's ability to guarantee that PSCI rate orders are kept within the confines of the law because such a holding would create a potentially endless cycle of evidentiary hearings and appeals designed to evade this Court's orders.

■ The only appeal that can be taken from a PSCI action enforcing an order from this Court is an appeal claiming that such PSCI action did not conform to this Court's order. Here, we have reviewed the PSCI action enforcing this Court's order, and we find it in complete conformity with the mandate of this Court.

## II

■ Because of our disposition of the first issue, the issue of a stay of rates pending appeal pursuant to I.C. § 8–1–3–6 is moot. Moreover, such a stay is only applicable to a first generation appeal. To allow a public utility to collect rates after they had been declared unlawful by this Court would be inequitable to the ratepayers and unlawful in itself.

It is therefore adjudged by this Court that the action of the PSCI in ordering an immediate reduction in rates and in setting a further hearing to determine the amount of refund due ratepayers is in conformity with the process required by statute and the mandate of this Court previously rendered in *Citizens Action Coalition et al. v. Northern Indiana Public Service Company et al., supra,* and is not subject to a stay.

PIVARNIK, SHEPARD and DICKSON, JJ., concur.

GIVAN, C.J., dissents with separate opinion.

GIVAN, Chief Justice, dissenting.

I respectfully dissent from the majority opinion in this case. In my opinion the majority ignores the well-established principal of law that the courts cannot fix utility rates. *See, e.g., Public Service Commission of Indiana, et al. v. Indiana Bell Telephone Company* (1955), 235 Ind. 1, 130 N.E.2d 467; *Public Service Commission of Indiana, et al. v. Indiana Bell Telephone Company* (1953), 232 Ind. 332, 112 N.E.2d 751. The above-cited cases are but a small portion of the cases stating this proposition of law.

Although I was one of two dissenting judges in *Citizens Action Coalition of Indiana, Inc., et al. v. Northern Indiana Public Service Co., et al.* (1985), Ind., 485 N.E.2d 610, I do not understand the majority opinion to purport to violate this proposition of law. The majority opinion in that case simply ordered the Public Service Commission of Indiana to vacate its prior order in the case. I see nothing in the majority opinion that could be interpreted as a mandate to set a particular rate or a mandate to NIPSCO to file a particular tariff sheet.

As all prior cases on the subject clearly state, the courts have no authority to dictate a particular rate, such is the exclusive prerogative of the Public Service Commission as authorized by the legislature. The

sole office of the courts is to determine if the action taken by the Public Service Commission violates the statutory laws or the Constitution of the United States or the Constitution of Indiana. Once a determination is made that there has been such a violation, the sole act of the courts is to remand the case to the Public Service Commission with the instruction to proceed in a legal fashion.

In the case at bar the three judges constituting the majority could not agree as to what was includable in the tariff sheet so far as the Bailly project was concerned. For this and many other obvious reasons, the only orderly method of procedure was for the Public Service Commission to set aside its prior order and to set a new hearing for the purpose of fixing rates which would comply with the law set down in the majority opinion.

The effect of the Public Service Commission's position that the Supreme Court had mandated the reduction of NIPSCO's rate by a specific amount is to treat the opinion as though the Court did in fact engage in specific rate setting. Rate setting for a modern public utility is of such great complexity and decisions have so much potential for far-reaching impact, both upon the consumer and the utility, that it is incredible to me that the Commission would interpret the Court decision to permit it to go forward with rate setting without a hearing. It is even more incredible to me that a majority of this Court would sanction such procedure. When one weighs the relative ease with which a new hearing could be had, as compared with the mischief that can be done in refusing to grant such a hearing, it would seem unthinkable that anyone would wish to proceed without such a hearing in which the complex issues involved could be approached in a deliberate and intelligent manner.

I would grant NIPSCO's prayer for relief and remand this case to the Public Service Commission for a full hearing as to the setting of rates.